IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: JOHN P. MESSINA, d/b/a ) | |
| The Law Office of John P. Messina ) | No. 09 C 1739 |
| ) | |
| ) | Judge Robert W. Gettleman |
| ) | |
| ) | Bankruptcy No. 99 B 29371 |
| ) | Adversary No. 99 A 1573 and 99 A 1803 |
| ) | Honorable John H. Squires, Presiding |

## **MEMORANDUM OPINION AND ORDER**

Appellant debtor John P. Messina ("Messina") appeals from an order of the United States Bankruptcy Court for the Northern District of Illinois ruling that the debt owed by Messina to appellee judgment holders American Citrus Products Corporation ("American Citrus") and John Labatt Limited[1] ("Labatt," and collectively with American Citrus, "Appellees") is non-dischargeable under 11 U.S.C. § 523(a)(6). Messina also appeals the approval of a Chapter 7 trustee's amended final report and notice of abandonment. For the reasons below, the decisions of the bankruptcy court are affirmed.

American Citrus has filed a motion for sanctions and for an order to prevent future misconduct. For the reasons below, the motion is granted.

## **FACTS**

The following facts are drawn from prior opinions and the parties' briefs. Messina's 50-page brief includes 37 pages of facts and is accompanied by a voluminous six-part appendix. The court also received essays, packets, and a 193-page binder of facts, background information,

---

[1]Labatt joins American Citrus and the trustee in their briefs.

and arguments.[2] The facts below are limited to those required for background and for purposes of this appeal.

Beginning in 1989, the parties were involved in substantial and protracted litigation involving unfair competition in the orange juice industry. Messina was an attorney for the plaintiff, Grove Fresh Distributors, Inc. ("Grove Fresh"), and Appellees were the defendants. Grove Fresh alleged that the defendants made and sold adulterated orange juice that was falsely labeled "100% pure."

Judge James B. Zagel, who presided over two related cases, issued a confidentiality order during the pendency of the first case,[3] and ordered that the subsequent complaint[4] be filed under seal. He explained the seal in a later opinion[5] regarding Messina's conduct:

> A key reason behind this decision was Mr. Messina himself. After presiding for the previous eighteen months over [the first case], I was familiar with certain tactics employed by Mr. Messina which I believed were questionable if not reprehensible. Specifically, I was wary of Mr. Messina's repeated attempts to beat the defendants into submission by disclosing materials previously designated as confidential to generate unfavorable publicity for them. I had no reason to believe Mr. Messina would change his methods and every reason to suspect he would attempt to try his latest suit on the courthouse steps as well.[6]

---

[2]Messina also directs the court to his website (http://jpm-law-chicago.com), providing access to briefs in this appeal and documents relating to the Rule 11 motion discussed below.

[3]Grove Fresh Distributors, Inc. v. Everfresh Juice Co., No. 89 C 1113.

[4]Grove Fresh Distributors, Inc. v. John Labatt, Ltd., No. 90 C 5009. Labatt is the parent company of Everfresh Juice Co. Labatt, Everfresh Juice Co., and American Citrus were among the defendants in the unfair competition cases.

[5]Grove Fresh Distributors, Inc. v. John Labatt, Ltd., 888 F. Supp. 1427 (N.D. Ill. 1995).

[6]Id. at 1431.

Messina argues the merits of the seal to this court,[7] as he has to the Seventh Circuit and bankruptcy court. The Seventh Circuit, however, considered and affirmed the merits of the seal,[8] and this court may not review its judgment. Similarly, the bankruptcy court explained that it "has no appellate jurisdiction whatsoever and cannot as a matter of law effectively reverse or undue [*sic*] any final judgment entered by those higher federal courts." In re Messina, 2000 WL 311145, at *6 (Bankr. N.D. Ill. Mar. 27, 2000)

All cases were settled in April 1993. In November 1993, American Citrus and Labatt petitioned the district court for a finding of contempt and other sanctions, including violation of Fed. R. Civ. P. 11, against Messina because of his conduct after settlement. A trial was held in February 1995. Judge Zagel found Messina in civil and criminal contempt for violations of court orders and found that he "violated Rule 11 in three ways, each of which would be independently sanctionable" (the "Contempt Order"). Grove Fresh, 888 F. Supp. at 1450.

The court sanctioned Messina for four charges of contempt—failure to appear in court as ordered by Judge Zagel and three violations of confidentiality orders. On appeal, the Seventh Circuit considered and affirmed the district court's judgment regarding all four instances of

---

[7] For example, Messina argues that because "Congress has authorized the FDA to use publicity to punish those who violate the food purity laws" and "[t]he Supreme Court has instructed lower courts to favor open judicial proceedings over secret ones," "the district court should have respected FDA and Supreme Court policy and vacated the seal."

[8] "In his Memorandum Opinion and Order, Judge Zagel thoroughly addressed Mr. Messina's attack against the orders of confidentiality. Judge Zagel discussed the proper scope, constitutionality, and validity of the orders []. Review of the seal and protective orders is properly within our jurisdiction. As such, we too conclude that the seal and protective orders were valid and constitutional and that Mr. Messina's attempts to attack the validity and constitutionality of the orders must fail." Grove Fresh Distributors, Inc. v. John Labatt, Ltd., 134 F.3d 374 (7th Cir. 1998).

contempt. The Seventh Circuit also considered and affirmed the district court's judgment regarding the Rule 11 violations.[9]

Messina was ultimately ordered to compensate American Citrus and Labatt in the amount of $80,485.37 and $69,069.08, respectively. In July 1995, the court found that Messina had not been given notice of potential criminal sanctions and, thus, vacated the judgment of criminal contempt.

Messina filed a bankruptcy petition on September 22, 1999, and Appellees subsequently filed an adversary proceeding[10] seeking a determination that the debt owed them by Messina is non-dischargeable because it arose from conduct causing willful and malicious injury. 11 U.S.C. § 523(a)(6). The parties filed cross-motions for summary judgment. Messina argued that prior proceedings should not be given preclusive or collateral estoppel effect, that the debt is dischargeable, and that the bankruptcy court should award him damages for tortious interference with his contractual relations with orange juice consumers.

The bankruptcy court found that Messina's motion was an attempt to relitigate the findings underlying the Contempt Order. Denying Messina's motion, the court stated:

> [T]he real focus of this § 523(a)(6) action is whether the Defendant's intentional conduct as directed against the Plaintiffs was of the proscribed "willful" and "malicious" kind, not whether the Defendant was wrongfully judged in the prior litigation between the parties and improperly sanctioned by another court. The ultimate question to be determined here is whether the Defendant's prior conduct resulting in the sanctions levied against him fits within the relevant statutory and case law requirements of § 523(a)(6) and Kawaauhau v. Geiger, 523 U.S. 57

---

[9] Grove Fresh, 134 F.3d 374.

[10] Adversary No. 99 A 1573.

4

(1998), not whether the higher federal courts in the prior litigation committed error in the judgment entered against him.[11]

The bankruptcy court granted Appellees' motion, finding that the debt owed by Messina is non-dischargeable under § 523(a)(6). In its analysis, the court identified and discussed the requirements of non-dischargeability and collateral estoppel. In re Messina, 2000 WL 311145, at *7-10.

After the Seventh Circuit affirmed the Contempt Order in 1998,[12] Messina was again held in contempt by the district court, and he again appealed the judgment to the Seventh Circuit. In 2002, the court of appeals explained:

> Even after [our 1998 order] was entered, Messina continued to disregard court orders and to include documents designated as confidential in public filings...On May 16, 2000, the defendants filed a petition in the district court, seeking a determination that Messina again be held in contempt for his disclosures in the bankruptcy proceeding. The district court granted this petition, and a second contempt decision was rendered on June 8, 2000.
>
> In June of 2000, Messina filed a motion to vacate the original contempt judgment, alleging that the manner in which the record for the first appeal was kept and assembled was improper. Messina claimed that the attorneys who represented him failed to raise this issue in his direct appeal because they feared judicial retribution from the district court in other litigation. In addition, Messina moved to recuse Judge Zagel, asserting an "unremitting bias" and conduct that Messina contends could result in Judge Zagel's impeachment. The district court denied both motions and subsequent motions to reconsider. Messina then filed this appeal.[13]

---

[11] In re Messina, 2000 WL 311145, at *7.

[12] Grove Fresh, 134 F.3d 374.

[13] Grove Fresh Distributors, Inc. v. John Labatt, Ltd., 299 F.3d 635, 639 (7th Cir. 2002).

The Seventh Circuit found that sanctions were appropriate and the appeal was "simply Messina's attempt to repackage his prior appeals."[14] The court also noted that he failed to act in good faith: "Given that Messina's claims have been unsuccessfully litigated numerous times in both this Court and in the district court, Messina could not have believed in good faith that he might be successful this time around."[15]

On September 29, 2003, the bankruptcy court held that performance bond proceeds in the amount of $50,000.00 constitute property of the bankruptcy estate under 11 U.S.C. § 541.[16] The bankruptcy court entered The Order Approving Trustee's Amended Final Report Filed and Notice of Abandonment, which Messina appeals, on January 27, 2009.

## DISCUSSION

**Bankruptcy Appeal**

This court has jurisdiction to hear the instant appeal under 28 U.S.C. § 158(a)(1), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees...of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." On appeal, the bankruptcy court's rulings and conclusions of law are reviewed de novo, Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir. 1994), and its findings of fact are not set aside unless they are clearly erroneous. Fed. R. Bankr. P. 8013.

---

[14]Grove Fresh, 299 F.3d at 642.

[15]Id.

[16]Adversary No. 99 A 1803. In re Messina, 2003 WL 22319416 (Bankr. N.D. Ill. Sept. 29, 2003).

6

The bankruptcy court properly ruled on each motion for summary judgment independently of the other. See ITT Indus. Credit Co. v. D.S. America, Inc., 674 F. Supp. 1330, 1331 (N.D. Ill. 1987). Messina makes several arguments on appeal. Most of his arguments, however, do not provide a basis upon which this court may reverse or remand the bankruptcy court's order. Messina's argument that his conduct did not cause Appellees willful and malicious injury—and the $149,554.45 due Appellees is therefore dischargeable—is twofold. First, he argues that the conduct that "triggered the contempt proceedings" was not malicious as a matter of law. Specifically, he argues that he had just cause to request a hearing before the Seventh Circuit, yet this request caused the contempt proceedings.

Messina also argues that the bankruptcy court erred by giving preclusive effect to the Contempt Order. Specifically, Messina argues that: (1) the contempt proceedings were unfair *per se*; (2) he was not fully represented in the contempt proceedings; (3) the underlying findings of the Contempt Order were never actually litigated, decided, or subject to appeal; (4) the underlying findings of the Contempt Order were based on judicial intuition, rather than on evidence; and (5) the Contempt Order is not a reliable account of the proceedings.

This court may not review judgments by the Seventh Circuit. Thus, to the extent Messina's arguments call into question confidentiality orders, contempt proceedings, or the Contempt Order, they must fail. Arguments (1), (4), and (5) fail for this reason. These arguments—that the contempt proceedings were unfair *per se* because they violated Messina's right to a public trial; that underlying findings of the Contempt Order were not based on evidence; and that the Contempt Order is not a reliable account of the proceedings—simply attack prior decisions of the district court, which were affirmed by the court of appeals. For

7

example, Messina argues that "the three confidentiality orders that he was charged with [violating] were under seal...[thus] the public lacked the tools essential to an effective scrutiny of the proceedings against debtor." In addition, the court of appeals has affirmed the Contempt Order and its findings. Grove Fresh, 134 F.3d 374.

Arguments (1), (4), and (5) also fail because they do not affect the non-dischargeability or collateral estoppel analysis. The only issue in the instant appeal is whether the bankruptcy court properly gave preclusive effect to the Contempt Order and found that the debt owed by Messina is non-dischargeable under § 523(a)(6). In its opinion, the bankruptcy court set forth the relevant requirements:

> In order to be entitled to a determination of non-dischargeability under § 523(a)(6), the Plaintiffs must prove three elements by a preponderance of the evidence: (1) that the Defendant caused an injury; (2) that the Defendant's actions were willful; and (3) that the Defendant's actions were malicious. [In re Carlson, 224 B.R. 659, 662 (Bankr. N.D. Ill. 1998).] "Willful" means intent to cause injury, not merely the commission of an intentional act that leads to injury. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)…"Malicious" means "in conscious disregard of one's duties or without just cause or excuse..." [In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994).]
>
> Collateral estoppel is an equitable doctrine. It applies when the following four requirements are met: (1) the issue sought to be precluded has been decided in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue was essential to the final judgment in the prior proceeding; and (4) the party against whom the doctrine is asserted was fully represented in the prior proceeding. Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc., 125 F.3d 526, 530 (7th Cir. 1997) (citation omitted); Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir. 1987).[17]

Arguments (2) and (3)—that Messina was not fully represented in the contempt proceedings and that the underlying findings of the Contempt Order were never actually

---

[17]In re Messina, 2000 WL 311145, at *7-10.

litigated, decided, or subject to appeal—as well as the argument that the conduct that "triggered the contempt proceedings" was not malicious, do involve the non-dischargeability or collateral estoppel analysis, but this court finds the bankruptcy court's conclusions of law reasonable and its findings of fact not erroneous.

The bankruptcy court noted that "[t]he Contempt Order was issued following a hearing at which the Defendant was represented by counsel and had a full and fair opportunity to litigate the charges brought against him. Moreover, he appealed both to the Seventh Circuit and the United States Supreme Court and lost."[18] In addition, the findings of the Contempt Order were actually litigated and decided to a final judgment.

The argument that the conduct that "triggered the contempt proceedings" was not malicious is not persuasive. The conduct Messina characterizes as his right to request a hearing before the Seventh Circuit was actually a blatant violation of the district court's seal and protective order. "The first charge of contempt against Mr. Messina stems from a forty-two page brief he filed with the Seventh Circuit []. At the time of filing, Mr. Messina was neither a party, nor an attorney for any party, in the Grove Fresh litigation. The Seventh Circuit struck the motion as frivolous, and asked him to show cause why he should not be sanctioned for improper conduct."[19] The district court found that Messina's disclosures—which Messina characterizes as simply a request for a hearing—and his "material misrepresentations to the [Seventh Circuit],

---

[18] In re Messina, 2000 WL 311145, at *10.

[19] Grove Fresh, 888 F. Supp. at 1445.

9

fudging his status as an attorney in the Grove Fresh litigation in order to claim standing to make a personal motion," were deceptive, improper, and willful.[20]

Messina's arguments regarding the trustees' fee awards and applications for administrative expenses are sparse; his briefs focus largely on the confidentiality orders, contempt proceedings, and Contempt Order. He argues that the trustees' fee awards should be vacated because they breached their fiduciary duties. Specifically, Messina claims that the trustees: (1) colluded with Appellees to divert the $50,000 Fund and used it to finance unproductive litigation; (2) caused a net loss to the estate; and (3) failed to litigate Messina's counterclaim.

Among other arguments, the trustee responds that Messina lacks standing as a debtor of an insolvent estate. A "'hopelessly insolvent debtor' does not have standing to appeal orders affecting the size of the estate. If a debtor can be so characterized, such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." Matter of Andreuccetti, 975 F.2d 413, 417 (7th Cir. 1992) (finding that the debtors could recover an amount sufficient to discharge their debts and provide them with a surplus following bankruptcy). Messina does not (and cannot) argue that he has standing with regard to the fee awards.

---

[20] "Mr. Messina's revelations are all the more egregious for having been made with full knowledge—as he admitted under cross-examination—that at the time he made his disclosures [the district judge] then had before [him] a motion in support of keeping under seal the very issues [Messina] disclosed." Grove Fresh, 888 F. Supp. at 1445.

The same was found by the bankruptcy court in 2003.[21] That court properly discussed the requirements of standing and found "that the Debtor fails the [] articulated test to demonstrate a personal stake in the outcome of this proceeding...The Debtor cannot rest his claim on the legal rights or interests of American Citrus and Labatt who do not dispute that the funds are property of the Debtor's estate."[22]

Messina cites Matter of Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995), for the proposition that the trustees are not entitled to compensation because they diminished the size of the estate. In Matter of Taxman, however, creditors *with standing* objected to attorney's fees. The court carefully examined the attorney's actions and found that he had abused his discretion because loss "became certain." It also noted that a "[reasonable] professional is not to be penalized, just as a trustee is not to be surcharged for a discretionary judgment that later proves to have been mistaken." Id. at 315.

Finally, Messina argues that the court should remand the issue of the trustee's applications for administrative expenses. With regard to this claim, the bankruptcy court again found that Messina lacks standing as a debtor of an insolvent estate. Here, he concedes the general rule, but argues that an exception exists where a debt is non-dischargeable.

In support, Messina cites McGuirl v. White, 86 F.3d 1232 (D.C. Cir. 1996). The McGuirl court found that, while only solvent debtors have standing in bankruptcy court, the debtors had standing because the court denied discharge of their debt and they had sufficient pecuniary interest in the estate. Specifically, the court reasoned that the debtors' interest in

---

[21]In re Messina, 2003 WL 22319416.

[22]Id. at *6.

11

challenging the fee application was not remote "[b]ecause all of the McGuirls' debts are non-dischargeable, any reduction in administrative expenses will necessarily reduce the amount of non-dischargeable claims that remain unpaid and for which the McGuirls would be liable post-bankruptcy." Id. at 1235.

In the instant appeal, Messina's pecuniary interest is remote. Moreover, this court finds persuasive the reasoning of the bankruptcy court in In re Adams, 424 B.R. 434 (Bankr. N.D. Ill. Mar. 12, 2010). Critiquing McGuirl, the court explained:

> The problem with this theory is twofold. First, standing requires that the court's order affect the debtor's pecuniary interest "directly and adversely." [Depoister v. Mary M. Holloway Found., 36 F.3d 582, 585 (7th Cir. 1994)]; Andreuccetti, 975 F.2d at 416; [In re Drost, 228 B.R. 208, 209 (N.D. Ind. 1998)]; see also In re Ray, 597 F.3d 871, 874 (7th Cir. 2010) (stating that a person's interest must be "directly affected" (internal quotation omitted)). But the effect that the [debtors and cases like McGuirl] describe is at best indirect: the administration of the estate produces no surplus, and so the trustee pays no money to the debtor himself, but payments the trustee makes to certain creditors arguably alter the debtor's post-bankruptcy liability to those creditors. Courts adopting the [debtors'] standing theory describe this effect as "direct." See, e.g., McGuirl, 86 F.3d at 1235 [citations omitted]. If so, it is hard to imagine what an "indirect" effect would be.
>
> Second, granting standing to every debtor who happens to be subject to some nondischargeable claim would interfere with the administration of chapter 7 cases. Many debtors are subject to nondischargeable claims. If every such debtor were suddenly entitled to take an active role in the trustee's administration of the case, the result would slow down the bankruptcy system and make it more costly…The bankruptcy system works because it processes cases expeditiously, [citation omitted] and it will continue to work only as long as it does so. The public policy goal of "swift and efficient" bankruptcy administration is "achieved primarily by narrowly defining who has standing in a bankruptcy proceeding." In re Richman, 104 F.3d 654, 657 (4th Cir. 1997); see also Ray, 597 F.3d at 874 (noting that limited standing ensures "bankruptcy proceedings are not unreasonably delayed by protracted litigation" (internal quotation omitted)).
>
> Although a sale at a price higher than the one [the trustee] proposes might conceivably reduce the [debtors'] post-bankruptcy tax liability, the fact remains

12

that under no circumstances will they receive a distribution from the estate in this case. Because they will not, the [debtors] have no standing to object to the sale.[23]

Thus, this court declines to remand the issue of the trustee's applications for administrative expenses.

**American Citrus's Motion**

American Citrus has filed a motion for sanctions and for an order to prevent future misconduct, arguing that Messina's bankruptcy appeal violates Rule 11, and that his assertion of arguments already rejected by the Seventh Circuit violates 28 U.S.C. § 1927. American Citrus requests an order requiring Messina to pay three times the attorney's fees and costs incurred, as well as a sanction to deter repetition of this conduct. Further, American Citrus requests an order "prohibiting Messina, or anyone on his behalf, from initiating or pursuing any legal proceedings whatsoever in any federal or state court that are related in any way to the Grove Fresh litigation or any of the subsequent proceedings."

As noted above, the Seventh Circuit found that additional sanctions were appropriate and that Messina did not file his claims in good faith. Moreover, the court noted that "[i]n his previous appeal, we warned that any future abuse of the legal system would result in sanctions. Messina failed to heed this warning. Because we have previously affirmed Judge Zagel's rulings against Messina, his latest attempt to manipulate the legal system can only be characterized as frivolous."[24]

Messina has once again used the instant appeal to relitigate the confidentiality orders,

---

[23] In re Adams, 424 B.R. at 437.

[24] Grove Fresh, 299 F.3d at 642.

13

contempt proceedings, and Contempt Order. In a statement of "additional" facts, Messina's response to American Citrus's motion *yet again* attacks Judge Zagel's seal, confidentiality orders, and finding of Rule 11 violations, as well as the record on appeal. Further, his responses to American Citrus's Rule 11 allegations reveal that his actions, including his filing of claims, were not in good faith.

For these reasons, the court finds that Messina has: (1) violated Rule 11 by presenting to the court pleadings for an improper purpose, causing unnecessary delay, needlessly increasing the cost of litigation, and containing frivolous arguments, as discussed above; and (2) violated § 1927 by unnecessarily protracting frivolous litigation. As a sanction for these violations, Messina is directed to pay American Citrus's attorneys fees and costs incurred in connection with this appeal. American Citrus is directed to file, on or before November 19, 2010, a petition for fees and costs based on this order, quantifying those fees and costs pursuant to the procedure specified in Local Rule 54.3. Any future attempt by Messina to relitigate the issues discussed herein, other than a direct appeal of this Memorandum Opinion and Order, will subject Messina to both civil and criminal contempt.

## **CONCLUSION**

For the reasons above, the decisions of the bankruptcy court are affirmed and American Citrus's motion for sanctions and for an order to prevent future misconduct is granted. This matter is set for presentation of American Citrus's petition for fees on November 23, 2010, at 9:15a.m.

**ENTER:** **August 20, 2010**

_____
**Robert W. Gettleman**
**United States District Judge**